George Emerson (Red) GRAY, Appellant,

v.

The STATE of Texas, Appellee.

No. 37263.

Court of Criminal Appeals of Texas.

Dec. 9, 1964.

Rehearing Denied April 21, 1965.

Arthur L. Lapham, Victoria, Percy Foreman, Houston (On Appeal Only), King C. Haynie, Houston (On Appeal Only), for appellant.

Wiley L. Cheatham, Dist. Atty., Cuero, Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for murder without malice; the punishment, five years.

The evidence of the state reveals that a football game, played in the afternoon, was viewed on television by several persons in a motel room. When all had gone except the appellant, the witness Broadwater, and the deceased, the appellant and Broadwater were trying to get the deceased, who was drunk, to leave, but the deceased had begun insisting on scuffling with the appellant. The deceased had come to the motel with Broadwater in the latter's car. Appellant's automobile and Broadwater's were parked a few feet apart in front of and facing the room in which the game had been viewed.

The appellant and deceased left the room and went to appellant's car, which the appellant entered on the driver's side. The deceased, still insisting on scuffling, forced his way into the car, also on the driver's side, and began getting rough with appellant. When the deceased declined to get out, the appellant, by using his knife, caused him to leave the car, the deceased saying "You are not going to cut me." Then as the deceased pinned him against the car door, the appellant grasped a hammer handle from under the seat and struck the deceased. The deceased took the handle away from appellant, and struck him several times, injuring the appellant. Then the deceased, carrying the handle, walked around to his right in front of appellant's car and walked in front of and to the other side of Broadwater's car, got in it on the passenger side, and closed the door.

While the deceased was going around to Broadwater's car, the appellant got out of his car on the driver's side, then he got back in the front seat on his knees, reached behind the front seat and got a shotgun. After getting the gun, he began walking around the front of his car, while making motions as if he were loading the gun, and he was angry and cursing the deceased. As the appellant, cursing and saying he would shoot him, walked in front of his car with the shotgun pointed toward deceased, the deceased jumped out of Broadwater's car, closed the door, and stood beside the right front door. Then the deceased went to the rear of Broadwater's car and around on the left side by the center of the left wheel and remained there. While the deceased was moving around by the left wheel, the appellant walked back to the driver's side of his own car and returned to the front, with the shotgun pointing toward the deceased. At this time, the appellant and deceased were about six or seven feet apart, and appellant raised the shotgun, thrust it forward with the muzzle about twelve to twenty four inches from deceased's face, and it discharged, shooting the deceased in the mouth and causing his death.

Testifying in his own behalf, the appellant stated that after deceased struck him

with the hammer handle, he got his shotgun from the back seat, told deceased to get in the car (Broadwater's) and leave, and appellant walked around in front of his (appellant's) car. He started his motor, intending to leave but when the motor faltered, deceased returned, apparently to prevent appellant from leaving. Appellant again got the shotgun, which he testified he "knew" was unloaded, and the deceased began backing up, waving the hammer handle in his hand. When appellant was in front of his car, the deceased was standing near the right front fender waving the handle, and as the deceased leaned toward him he jabbed him in the face with the shotgun and the gun fired, hitting deceased in the face. Appellant further stated that he thought the deceased was going to hit him with the handle, and he had the shotgun to beat him off, and he hit him with the barrel to "get him loose" from the handle; that he did not pull the trigger, and that a defective slide caused the gun to discharge; that he did not intend to kill the deceased, but he was afraid the deceased would seriously injure him. Appellant also testified that he never saw the deceased get in Broadwater's automobile.

The court charged the jury on the law of self-defense and also on accident.

In connection with the law of self-defense the court also charged the jury on the law of abandonment of the difficulty by the deceased.

Appellant contends that the trial court erred in charging the jury on the law of abandoning the difficulty for the reason that the issue was not raised by the evidence.

■ The state's evidence reveals that after the deceased took the hammer handle from the appellant, he, the deceased, walked around to the left front of appellant's car in the general direction of the motel room, and on to the right in front of Broadwater's car to the other side of the car, got in the car and closed the door. According-

ing to the state's evidence, the deceased did nothing further, until he saw the appellant in front of his (appellant's) car with a shotgun pointed toward him, cursing and saying he would shoot him, and the deceased jumped out of the car and stood beside it, facing the appellant. This evidence raised the issue of the abandonment of the difficulty, therefore it was not error to submit it to the jury. 4 Branch (2) 478, Sec. 2145.

By formal bill of exception, appellant complains of the action of the trial court in permitting the witness Jerry Casparis, a brother of the deceased, to remain in the courtroom and advise and assist counsel for the State in the selection of the jury. To support this contention he takes the position that his defense of accident was probably his strongest defense, which was supported by his testimony that the shotgun would sometimes accidentally discharge. The testimony of the state's witness Casparis contradicted that of appellant on the defense of accident. Casparis testified before the jury that during the times he hunted with the appellant the shotgun showed no malfunction or trouble with the safety, shell feeder, or ejector, nor did it discharge accidentally.

■ The bill as qualified recites that after objection by the appellant, the witness Casparis sat outside the rail with the spectators; that during the voir dire examination of the jury the state's attorney from time to time, outside the rail, conferred with Casparis and others outside the rail as well as members of the court inside the rail; that there was no audible conversation between the state's attorney and Casparis, and no improper conduct by either; that Casparis knew only two prospective jurors by name, and there was no showing that either served on the jury or that any chosen juror knew the witness Casparis or the deceased.

The district attorney served a six county district, and he did not live in the coun-

ty in which the offense occurred or was tried.

No error is reflected in the bill.

 The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the Court.